*525 In March, 1829, the appeal was heard in Charleston, and the judgment of the Court announced as follows:
Colcock, J.
The Court are decidedly and unanimously of
opinion that the motion in this case should be granted. But, as this is the first case in which this Court has granted an application for a bill of review, and will, of course, be referred to as a precedent, it is deemed important that our reasons should be more fully stated than can now be done. The opinion will therefore be sent to the Clerk of this Court, and, in the mean time, the petitioners are permitted to proceed ; if, indeed, any proceedings should be deemed necessary, after this determination is known.
Nott and Johnson, JJ., concurred.
At d subsequent day, the following opinion, stating the reasons of the Court, was filed with the Clerk :
Colcock, J.
The questions which arise in this case are of the first importance in the administration of the Chancery jurisdiction of the State. After much discussion, our ancestors thought proper to establish this jurisdiction, and there has been a continued effort, on the part of pur legislators, to correct, as much as possible, both the abuse í of power exercised by those Courts, and the delays which hávp arisen from the mode of conducting the business in them. Believing, as we do, that such a jurisdiction is essentially necessary to the complete and perfect administration of justice, we have endeavored to cooperate with the Legislature, to restrain within its proper limits this jurisdiction, and so to regulate the practice as to procure the most speedy determination of cases, which is consistent with their mixed, diversified, and oftentimes complex character. In' England, a Chancery suit is the business of a lifetime, and not unfrequently descends, with the property, to the second or third generation. In order to prevent this delay here, the right of appeal is given to a tribunal which sits twice a year, as in the ordinary cases of the Law Courts, the decision of which is final and conclusive of the subject — and hence it has been ar *526 gued that no other re-hearing of a case should be granted in this State.
That it was the intention of the Legislature to prevent the delay resulting from the circuitous course of proceeding in England cannot be doubted, but that they intended to preclude the granting of bills of review, under any circumstances, will not be conceded. In words, they have not done so, and it would be improper to imply such intention, in opposition to the essential benefit resulting from a judicious exercise of the power; nay, I may say, from the absolute necessity of its existence. In the case of Haskell and Raoul, (1 McC. Ch. 22,) although we rejected the application, yet the Court say : “ We are not to be understood as saying that a bill of review, for newly discovered evidence, (subject to all the conditions and regulations prescribed on those occasions,) may not be granted.” We are then to decide whether the present applicants have brought themselves within the reasons and the rules on which such applications have been granted. The case itself, out of which this application has arisen, was one of much importance, both as to the amount of property and the principles involved in it. From the situation of the parties, (most of them being resident abroad,) and the complex nature of their demands, depending, not only on evidence to be obtained in the country in which they lived, but on the construction of deeds drawn and executed according to the forms of other countries, the difficulty in the decision of it was also greatly increased. In this state of things, and in the absence of the applicants, the cause was heard, and an important paper, on which the claim of the applicants (according to the opinion of a majority of the Court) depended, and which was in the possession of one of the former counsel, was not produced at the hearing. On the part of the applicants, it is contended that this was not their fault; that there was no negligence on their part; that their claim is just, legal and equitable ; that, although they may not come within the very letter of Lord Bacon’s rules, they are clearly within the spirit and meaning of them. On the other *527 hand, it is said to be the ordinary case of negligence, where the guilty party sacrifices his private right to the operation of a rule, indispensably necessary to the common good ; that, where one has evidence which he will not, or does not, produce at the trial, he is not entitled to a re-hearing.
We would reluctantly depart from a rule, the wisdom of which is admitted on all hands, and one which we have so often practically applied ourselves. But qui hceret in litera, hccret in cortice, is a maxim which must never be forgotten by those who administer equity.
How difficult is it so to express any rule, as not to exclude cases which are evidently (upon the mere statement of them) within its spirit. The facts in this' case are, that the papers were all sent to the counsel formerly engaged in this case. The deed in question was written in the French language', on parchment, folded but not endorsed. The attorney, who very laboriously and with great technical precision made out the abstract of the deeds on which .the claim depended, overlooked this deed, and it was not discovered that it was a paper having any relation to the case, until after the decision. The rule laid down by Lord Bacon is in the following words: “No decree shall be reversed, altered or explained, being once under the great seal, but upon-, bill of review; and no bill of review shall be admitted, except it contain either error in law, appearing in the body of the decree, without farther examination of matter in fact, or some new matter, which hath arisen in time after the decree, and not any new proof, which might have been used when the decree was made; nevertheless, upon new proof that is come to light after the decree was made, which could not possibly have been used at the time when the decree passed, a bill of review may be grounded, by the special license of the Court, and not otherwisewhich ordinance, it is said by Lord Hardwicke, (3 Atk. 26,) has never been departed from. Now, whether we take 'the words of Lord Bacon, or those, of the expositors who followed him, I think the case before us is embraced in the rule, “ nevertheless, upon new *528 proof, that is come to light after the decree was made,” &c. Now, I take it, that the word “ new ” may as much apply to the discovery of the proof as to its existence: for de non appa rentibus, et non existentihus eadem est ratio. Although the proof might exist, yet, if not produced it could not be acted upon ; and the learned Chancellor could not have intended, in laying down a general rule, to exclude a case which, in effect, is precisely that stated in the rule : and this seems to have been the idea of that great man, Lord Hardwicke, for he says, “it must appear that the new matter has come materially and substantially to the knowledge of the party, or his agents, which is the same thing, since the time of the decree in the former cause, or since such time as he could have used it to his benefit and advantage in the former cause.” Coop. Plead. 91; 1 Ves. sen. 434.
Now, it is very clear that the proof in this case came to the knowledge1 of the agent after the decree, and if the meaning is, new as to discovery, which I think is clear, the case before us is within the letter of the rule. It is true that the ordinance does say, “ or some new matter which hath arisen in time after the decree, and not any new proof which might have been used when the decree was madebut T confess I cannot see how any circumstances, which could arise after a decree, could bé made the ground of a review. I think this language is obscure, and must be considered as qualified and explained by that which immediately follows, and which I have referred to : “ Nevertheless, upon new proof that is come to light after the decree was made,” <fcc.
But, if it be conceded that, by the rule, a review can be granted on “ some new matter which hath arisen after the decree,” yet I think it must also be granted, that it can be obtained “ upon new proof that is come to light after the decree,” which is the case before us — and for this abundant authority can be produced, independent of the rule itself. In the case of Patterson vs. Slaughter, Amb. 293, Lord Hardwicke says, “all the bills of review I have ever known, were of new matter, to *529 prove what was put in issue. Lord Effingham’s case was so. He claimed under an old entail, and though he afterwards made title under a different entail, yet the issue was as claiming under some old entail generally. In the present case, it is not new matter to prove what was put in issue, but to prove a title that was not in issue : and therefore the defendant could not be entitled to a bill of review.”
So, in the case of Taylor vs. Sharp, (3 P. Wms. 372,) the Chancellor says, “ the remedy by bill of review must be either,” &c., “or upon some new matter, as. a release, receipt, &c., proved to have been discovered sinceand in the case of Standish vs. Radley, 2 Atk. 177, it was decided, that papers, in the hands of a party to a former cause, though not produced, may be read upon a bill of review, not being discovered until after publication in the cause. (1 Harrison, Ch. Pr. 137, 452.) It is, however, contended, that this paper being in the possession of the former attorney, cannot be said to be newly discovered testimony, for that it was his duty to have examined it, and ascertained its contents. But I think neither the rule, nor the reason of the rule, go so far. A man may have possession of a paper,-and not know it, and the affidavits are satisfactory to that point. In the most guarded exercise of the power of reviewing cases, it is only necessary to ascertain that no imposition is attempted to be practiced on the Court, as to the knowledge of the existence of the evidence offered. If the paper was not examined, (or was not seen, being among others not thought to be important,) it is a case of newly discovered evidence. It is perhaps difficult to tell how it was overlooked. It is often impossible for one to tell how he loses a paper : for if he had known the when and the how, it would not have been lost. It is a case, as I conceive too, differing widely from those cases which speak of one, having possession of a paper, not being entitled afterwards to use it. Those are cases, where the person having the possession, also had a full knowledge of its contents, and, through a culpable negligence or forgetfulness, fails to produce it, or is instigated by some motive of interest or gain in another *530 way. In this case, there appears to have been all the diligence and attention which could have been required, and more than is ordinarily used, and it is impossible to conceive of any motive which could have induced an intentional withholding of the deed; nor is there the slightest ground to suspect imposition in any way. We are, therefore, unanimously of opinion, that the motion should be granted.
Nott and Johnson, JJ., concurred.

Motion granted.